

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-233-CR

GUILLERMO LUGO                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Guillermo Lugo appeals his conviction for murder. In five issues, Lugo argues that the trial court erred by admitting trial testimony regarding his statement made to police; that the evidence is legally and factually insufficient to sustain his conviction; and that the trial court erred by overruling his objection to a punishment-enhancement paragraph in the indictment. We will affirm.

## II. Background

On November 21, 2002, Fort Worth Police Officer Robert Presney went to a local motel to investigate a homicide. Presney found Ernesto Delgadillo lying face down on the floor of a motel room with a fatal bullet wound in his back. Presney learned that Delgadillo was not the registered occupant of the room. After securing a search warrant, Presney searched the room and found further evidence that a homicide had occurred. Fort Worth Police Detective Thomas Boetcher arrived and also searched the room. During his search, Boetcher discovered pay stubs with Lugo's name on them. Boetcher then obtained an arrest warrant for Lugo, but Lugo could not be located.

During his investigation, Boetcher interviewed Marquita Sanchez. Sanchez said that she had gone to the motel room on November 21, 2002, to sell Lugo drugs. She also said that she had seen Lugo carry a .38 revolver in the past. She stated that when she arrived at the motel room, Delgadillo was knocking on its door. According to Sanchez, Lugo let her in but did not initially allow Delgadillo to enter. While they carried out a drug deal, Sanchez said that Delgadillo continued to demand that Lugo let him in by persistently knocking on the door and verbally insisting to be let in. Lugo eventually let Delgadillo in. Sanchez said that Delgadillo soon began begging Lugo for drugs. Sanchez said the two began to argue. Sanchez said that Delgadillo allowed Lugo to beat on him despite his superior strength because he "want[ed] the drugs so bad[ly]." By Sanchez's account, Lugo and Delgadillo began to wrestle over a gun—a

handgun consistent with the .38 revolver Sanchez had seen Lugo carry previously.

Worried that the quarrel might lead to her being caught with drugs, Sanchez grabbed her things and walked toward the door. At that time, Delgadillo was on his knees. As Sanchez reached the door, she heard a gunshot. She turned back around and saw Delgadillo falling face forward and Lugo holding the gun. Sanchez said she ran from the motel room and got into her car. As she prepared to leave, she saw Lugo and two girls run down the stairs and get into a truck. She then saw Lugo go back up the stairs briefly, return to the truck with a black duffle bag, and drive away.

More than five years after the initial investigation, Fort Worth Police cold case file Detective Manny Reyes flew to Columbus, Ohio, to interview Lugo, who had been apprehended and was being detained. Initially, Lugo denied being in Fort Worth at the time of the murder; but Lugo eventually admitted that he was in the motel room when the murder occurred; that some of the items found in the motel room during the murder investigation belonged to him; and that he drove a truck at the time of the murder. The State indicted Lugo for the murder of Delgadillo. The indictment included two felony enhancement paragraphs.

Lugo moved to have his statement to Reyes suppressed. The trial court denied the motion. Lugo also made numerous objections, many of which the trial court sustained, to portions of his recorded statement being admitted—so

much so that the prosecutor, Lugo's counsel, and the trial court determined that the best course of action was to allow the prosecutor to develop Lugo's statement through questioning Reyes, rather than allowing the recorded statement to actually be played for the jury.

During the trial, Reyes testified about portions of Lugo's statement. Specifically, Reyes testified that Lugo had initially denied being at the motel room when Delgadillo was murdered, but later in the interview admitted that he was in the motel room at the time of the shooting; that he had been the victim of an attempted robbery; and that although he had heard a shot fired during the alleged robbery, he did not shoot anyone. Reyes also testified that he had taken buccal swabs of Lugo during the interview. The State introduced evidence that DNA from these swabs matched DNA taken from the motel room where Delgadillo was murdered.

The State also called Sanchez as its key witness, and she testified to the contents of her statement made to Boetcher. Marc Krouse of the Tarrant County District Medical Examiner's office testified that Delgadillo died of internal bleeding from a contact-range gunshot wound and that Delgadillo's knees had bruising and scraping consistent with a scenario where Delgadillo was kneeling when he was shot. Michael Ward, a senior forensic scientist for the Fort Worth Police Department Crime Laboratory, testified that the bullet that killed Delgadillo was a .38 projectile that was likely fired from a .38 revolver.

A jury found Lugo guilty and assessed punishment at twenty-five years' confinement. This appeal followed.

## III. ARTICLE 38.22 AND LUGO'S STATEMENT

In his second issue, Lugo argues that the trial court erred by allowing Reyes to testify about statements Lugo made to Reyes during interrogation. The focus of Lugo's argument is that Reyes's being allowed to testify about information contained within Lugo's statement, rather than the statement itself being admitted, violated the statutory requirement that in order for a custodial statement to be admitted at trial, it must be reduced to writing or electronically recorded. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(1) (Vernon 2005). We conclude that Lugo failed to preserve this complaint for our review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). And the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App.

2004); *Vafaiyan v. State*, 279 S.W.3d 374, 383 (Tex. App.—Fort Worth 2008, pet. ref'd).

Although Lugo objected to the admission of portions of his statement and also objected that his statement was the product of police coercion, none of these objections comport with the complaint he now brings on appeal—that the trial court erred by allowing Reyes to testify about statements Lugo made to Reyes during interrogation. Because the complaint Lugo now makes on appeal does not comport with any complaint made to the trial court, he has forfeited this error, if any. *See Heidelberg*, 144 S.W.3d at 537 (holding that defendant failed to preserve for appellate review complaint that prosecutor's use of post-arrest silence against defendant violated the Texas Constitution because complaint did not comport with defendant's trial court objection based solely on the federal Constitution). We overrule Lugo's second issue.

## IV.  VOLUNTARINESS OF LUGO'S STATEMENT

In his first issue, Lugo argues that the trial court erred by denying his motion to suppress and allowing—through Reyes's testimony—his statement to be admitted at trial. Lugo argues that Reyes "stepped over the line and coerced" Lugo's statement. Although in his brief Lugo combines the analysis of his first and second issues (the second issue that we have already held was not preserved), the gist of Lugo's first issue is that his statement was made involuntarily because of remarks Reyes made to Lugo during the interview. Thus, the significance of Lugo's first issue is whether Reyes's remarks overbore

the voluntariness of Lugo's statement.  We agree with the trial court that Lugo's statement was "voluntarily given."

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition.  *Reed v. State*, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).  A confession is involuntary if circumstances show that the defendant's will was "overborne" by police coercion.  *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).  In other words, the statement is involuntary if the record reflects "official, coercive conduct of such a nature" that any statement obtained thereby is "unlikely to have been the product of an essentially free and unconstrained choice by its maker."  *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  A defendant's statement must not have been obtained by the influence of hope or fear.  *Creager*, 952 S.W.2d at 856 (citing *Cain v.*

*State*, 18 Tex. 387, 390 (1857)). Even trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process. *Id.* at 856 (citing *Dotsey v. State*, 630 S.W.2d 343, 349 (Tex. App.—Austin 1982, no pet.)). The ultimate question is whether the suspect's will was overborne. *Id.* (citing *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985)).

Lugo claims that his statement to Reyes was coerced because Reyes made two remarks to him during interrogation. First, Reyes asked Lugo, "[W]hy don't you just tell me . . . the truth about what happened and see if we can prove what you say?" Second, Reyes made the statement to Lugo, "I swear to you that I will do whatever I can with the evidence, with witnesses[,] or whatever, with the laboratory, whatever to prove what you told me is the truth." Lugo provides no argument as to how these remarks produced an untruthful confession, were offensive to due process, or otherwise caused his will to be overborne. We conclude that these statements did not overbear Lugo's will and that Lugo's statement to Reyes was essentially a free and unconstrained choice. If anything, Reyes's remarks conveyed a sense that the veracity of Lugo's statement would eventually be discovered. *See Gomes v. State*, 9 S.W.3d 373, 377–78 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (reasoning that defendant's will was not overborne by interrogator's remarks that conveyed "a sense of inevitability" that the truthfulness of defendant's statements would be discovered). We hold that the trial court did

not err by denying Lugo's motion to suppress his statement, and we overrule Lugo's first issue.

## V. SUFFICIENCY OF THE EVIDENCE

In his third and fourth issues, Lugo argues that the evidence is legally and factually insufficient to convict him of murder. Specifically, Lugo contends that the only eyewitness who testified "is totally unbelievable" because she is a convicted felon, her recollection of the murder "changed many times," and she admitted under cross-examination that she "was not completely truthful" with the lead detective during the police investigation.

### A. Law on Murder

A person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1)–(2) (Vernon 2003).

#### i. Legal Sufficiency Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

ii.    Legally Sufficient Evidence

Viewing the evidence in the light most favorable to the verdict, the record demonstrates that there was legally sufficient evidence that Lugo murdered Delgadillo. The police found Delgadillo, murdered, in Lugo's motel room. There was evidence that Lugo occupied the motel room because his personal items,

paperwork, and DNA were found there. Lugo admitted to Reyes that he was in the room when Delgadillo was murdered. There was testimony that Lugo and Delgadillo fought over a .38 revolver moments before Delgadillo was killed. The lead witness testified that she had seen Lugo carry a .38 revolver in the past. The bullet that killed Delgadillo was a .38 caliber bullet. Sanchez saw Delgadillo on his knees immediately before she heard a gunshot. After she heard the gunshot, Sanchez testified that she saw Lugo pointing a gun at Delgadillo and Delgadillo falling forward. Police found Delgadillo face down with a fatal gunshot wound to his back. There was also testimony by the medical examiner that Delgadillo died of a contact-range gunshot wound and that Delgadillo's knees had bruising and scraping consistent with a scenario where Delgadillo was kneeling when he was shot.

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found that the evidence at trial was sufficient to establish the elements of murder beyond a reasonable doubt. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 19.02(b)(1)–(2) (providing elements of murder). Accordingly, we hold that the evidence is legally sufficient to support Lugo's conviction. We overrule Lugo's fourth issue.

### iii.    Factual Sufficiency Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.

*Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence

because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### iv. Factually Sufficient Evidence

Even though Lugo raises a factual sufficiency of the evidence complaint in his third issue, we agree with the State that Lugo's factual sufficiency issue is "simply an attack on the credibility of a witness. " Specifically, Lugo attacks the credibility of Sanchez, the State's key witness and the only eyewitness to Delgadillo's murder to testify at trial, by pointing out that she admitted that she had not been completely truthful to police during their initial investigation and that her testimony regarding where Delgadillo's body fell toward the floor in relationship to Lugo was inconsistent with the medical examiner's testimony concerning the proximity of the weapon that killed Delgadillo when it was fired. Lugo contends that when "her testimony is reviewed as a whole, she is totally unbelievable."

Even if Sanchez's testimony was inconsistent, it was within the jury's purview to determine the credibility of her testimony, and the jury was also free to believe her trial testimony over her statement made to the police during their investigation. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988); *see also Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999) (noting that inconsistency goes to the credibility of the witnesses and the jury is the sole judge of that issue). Further, the jury was free to disregard any or all of her testimony, including whether to believe her account of where Delgadillo's body fell after he was shot. *See Walker v. State*, 180 S.W.3d 829, 831–32 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding evidence legally and factually sufficient to convict for robbery even though sole eyewitness's testimony that robbery lasted nearly two minutes was inconsistent with security tapes indicating that robbery lasted less than one minute); *see also Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) ("Reconciliation of conflicts and contradictions in the evidence is within the province of the jury."). We also do not find any infirmity that Sanchez was the only eyewitness to the murder to testify. *See Bowden*, 628 S.W.2d at 784.

We have reviewed the evidence in a neutral light, and we find no objective basis in the record for holding that the jury's verdict was clearly wrong or manifestly unjust or that it was contradicted by the great weight and

preponderance of the evidence. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Lugo's conviction. We overrule Lugo's third issue.

## VI. PUNISHMENT RANGE ENHANCEMENT

In his fifth issue, Lugo argues that the trial court erred by overruling his objection to the punishment charge because "there is no showing that one of the habitual offender convictions is a felony." Specifically, Lugo argues that it is not clear "from the judgment" whether his previous conviction for driving while intoxicated ("DWI") was a felony or a misdemeanor. The State counters that Lugo waived this objection because he did not object to the indictment—providing Lugo with notice that the State was seeking to enhance the range of punishment—prior to trial. The State further argues that, even if Lugo's issue is preserved, the "judgment plainly reflects that [Lugo] was convicted of the felony offense of felony driving while intoxicated." This court rejects the State's argument that Lugo has waived this potential point of error, but we agree with the State that sufficient evidence exists that the conviction in the enhancement paragraph Lugo complains of was a felony for purposes of enhancing the sentence range for his conviction of murder.

The State's inclusion of the enhancement paragraphs served to substantially increase Lugo's range of punishment. A person with no felony enhancements who is convicted of murder—a first degree felony—faces a prison sentence "for life or for any term of not more than 99 years or less than 5 years." *See* Tex. Penal Code Ann. §§ 12.32(a), 19.02 (Vernon 2003). But the minimum prison term a defendant may receive increases to fifteen years when one felony enhancement is found to be true. *See id.* § 12.42(c)(1) (Vernon Supp. 2008). And when two felony enhancements are found to be true, as is the case here, a defendant found guilty of murder may be assessed no fewer than twenty-five years' confinement. *Id.* § 12.42(d).

First, addressing the State's argument that Lugo failed to preserve this error for review: This court acknowledges that the cases cited by the State do stand for the proposition that failure by a defendant to object to a potentially defective enhancement paragraph included in an indictment prior to trial prohibits the defendant from raising any alleged error on appeal. *See Goins v. State*, 841 S.W.2d 527, 532–33 (Tex. App.—Houston [1st Dist] 1992, pet. ref'd) (overruling challenge to enhancement paragraph contained in indictment for failure to object prior to trial); *see also Shaw v. State*, 794 S.W.2d 544, 544–45 (Tex. App.—Dallas 1990, no pet.) (overruling challenge to enhancement paragraph in indictment where objection made after jury returned a verdict of guilty but prior to punishment). The holdings in this line of cases are predicated on the language found in Texas Code of Criminal Procedure

article 1.14(b), "If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment . . . [before trial], . . . he may not raise the objection on appeal." Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005). Article 1.14(b) is designed to prevent a defendant from lying "behind the log" and attacking an otherwise constitutionally valid indictment for the first time on appeal—it does not relieve the State of its burden to prove that a defendant is a habitual offender. *Compare Teal v. State*, 230 S.W.3d 172, 175–78 (Tex. Crim. App. 2007) (discussing legislative-reform package designed to prevent conviction reversals based on the "fine technical distinctions between defects of form and those of substance") *with Jordan v. State*, 256 S.W.3d 286, 291–92 (Tex. Crim. App. 2008) (holding that State's burden under habitual offender statute is an issue of sufficiency of evidence and cannot be categorized as trial error).

Indeed, the court of criminal appeals has said, "A claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so." *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). The court of criminal appeals has also "consistently held that where there is *no* evidence to show that the offenses were committed and became final in the proper sequence, the defendant's sentence may not be enhanced under the State's habitual offender statutes." *Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987). Our review of Lugo's brief indicates that he is challenging the sufficiency of the evidence to

support one of the indictment's enhancement paragraphs, not the paragraph itself. Thus, he can raise this issue on appeal even though he did not object to the paragraph until after the jury returned a verdict of guilty. *See Tomlin*, 722 S.W.2d at 705. Therefore, we now address the State's argument that sufficient evidence exists that Lugo's prior conviction for DWI was a felony and was sufficient to satisfy the habitual offender statute.

Before the State may use enhancement paragraphs to increase a defendant's range of punishment, it must prove that they are true beyond a reasonable doubt. *See Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). When the State seeks to punish a defendant as a habitual offender, and thus includes two felony enhancement paragraphs in the indictment, the State must show that the defendant committed each successive felony after the prior conviction was final. *See* Tex. Pen. Code Ann. § 12.42(d). Here, the enhancement paragraphs read:

> Habitual offender notice: And it is further presented to said court that prior to the commission of the offense or offenses set out above, [Lugo] was finally convicted of the felony offense of possession with intent to deliver a controlled substance . . . in cause number 0573866D, on the 28th day of August, 1995, and, that prior to the commission [of 0573866D, Lugo] was finally convicted of the felony offense of driving while intoxicated and felony repetition . . . in cause number 0484031D, on the 10th day of May, 1993.

Thus, for the State to show that Lugo was subject to punishment as a two-time habitual offender, it was required to show beyond a reasonable doubt that before commission of the primary offense—murder—Lugo had been finally

convicted of *felonies* in cause numbers 0573866D and 0484031D and that they were committed in the proper sequence. *See id.*; *Casey v. State*, 708 S.W.2d 914, 916 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd).

There are several ways that the State may prove that a conviction is final and is true beyond a reasonable doubt. For instance, generally a defendant's plea of true to an enhancement paragraph provides sufficient evidence to find the paragraph true beyond a reasonable doubt. *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *see also Magic v. State*, 217 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A defendant who has pleaded true to an enhancement paragraph can still contend, however, that the evidence is insufficient to support proof of the paragraph beyond a reasonable doubt, but only when "the record affirmatively reflect[s] that the prior conviction should not have been used for enhancement purposes." *Mikel v. State*, 167 S.W.3d 556, 559–60 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (quoting *Cruz v. State*, No. 01-00-00463-CR, 2001 WL 1168273, at *1 (Tex. App.—Houston [1st Dist.] Oct. 4, 2001, no pet.) (not designated for publication)); *see also Ex parte Rich*, 194 S.W.3d 508, 513–14 (Tex. Crim. App. 2006).

Here, prior to punishment being assessed, Lugo objected to the use of his conviction for felony DWI in cause number 0484031D for enhancement purposes because the pen packet reflected he was assessed punishment falling within the range of punishment consistent with both a misdemeanor or a

felony.    Nonetheless, Lugo pleaded true to both enhancement paragraphs. Thus, Lugo must now show that the record affirmatively reflects that his prior conviction for DWI should not have been used for enhancement purposes.  *See Ex Parte Rich*, 194 S.W.3d at 513–14.  In other words, he must show that the record affirmatively establishes that his conviction for DWI was not a felony. *Id.*

The pen packet for cause number 0484031D describes the convicted offense as "Driving while intoxicated and felony repetition."  The pen packet further describes that Lugo pleaded guilty to DWI as part of a plea bargain, and that the punishment assessed was for six months' incarceration in the Tarrant County Jail and a $500 fine (a punishment within the range for either a misdemeanor or a felony under the DWI law that existed when Lugo pleaded guilty.)  Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1574–77, *repealed by* Act of May 19, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586, 3704 (codified as amended at Tex. Penal Code Ann. § 49.09 (Vernon Supp. 2008)).  Furthermore, Lugo's defense counsel explained to the jury that Lugo had been convicted of "felony DWI and . . . on two previous occasions [Lugo] was convicted of misdemeanor DWI."

Considering that Lugo pleaded true to the enhancement paragraph predicated on cause number 0484031D; that there was evidence in the pen packet that the conviction was for "felony repetition"; that Lugo admitted he had been convicted of felony DWI; and that the punishment assessed for cause

number 0484031D was within the range of punishment for a felony, we hold that Lugo has failed to demonstrate that "the record affirmatively reflect[s] that the prior conviction' should not have been used for enhancement purposes." *See Mikel*, 167 S.W.3d at 559–60.  We overrule Lugo's fifth issue.

VII. CONCLUSION

Having overruled each of Lugo's five issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and MEIER, JJ.

PUBLISH

DELIVERED:  October 1, 2009