

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-10-00322-CR**


DAVID LEE ELLIOTT, JR.                                                        APPELLANT

V.

THE STATE OF TEXAS                                                                 STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant David Lee Elliott, Jr. appeals his conviction for sexual assault of a child. In two issues, he contends that the evidence is insufficient to support the conviction and that the trial court erred by allowing a witness's attorney to make objections that were unrelated to the witness's constitutional rights. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

When she was sixteen years old, Lauren McElhaney lived with appellant (her step-father) and Andrea McElhaney (her mother) at a house on Fagan Street in Blue Mound. According to Lauren, on September 4 or 5, 2009, because Amanda Stegall and Jeffrey Humphries were staying in a different room in the house, Lauren was sleeping in a bed with Andrea and appellant.[2] Although Lauren went to sleep wearing shorts and panties, she awoke to find appellant's tongue touching her vagina. Lauren loudly said, "What the f---." Appellant quickly went back to his side of the bed, and Andrea awoke.

Lauren told Andrea what had happened, and Andrea became upset and said, "Again, David" but then "didn't really do anything." Lauren began crying. She did not call the police, however, because she was scared of appellant.

According to Amanda's testimony, Lauren, who was "shaking and obviously upset," came into Amanda and Jeffrey's room. Lauren told Amanda that appellant had pulled her shorts down and licked the inside of her thighs. Minutes later, according to Amanda, appellant entered the room and said, "I'm sorry, Lauren, I thought you was [sic] your mother."

---

[2]Lauren had used drugs with Andrea and appellant hours before they all slept, and Lauren suspected that Amanda and Jeffrey had also used drugs that day, although Amanda denied doing so. Amanda supplied methamphetamine for Andrea, Lauren, and appellant to use. Lauren testified that she had not used marijuana from September 2009 until the trial in July 2010.

Amanda believed that Lauren was afraid of appellant. She described Lauren and Andrea as having a friendly relationship rather than a normal mother to daughter relationship. She also said that Andrea sided with appellant more than Lauren but that Andrea and appellant's relationship was "[r]ocky."

According to Amanda, for a couple of days after the incident occurred between appellant and Lauren, appellant carried a gun around the house; Amanda believed that appellant was trying to intimidate Lauren and Andrea. Amanda eventually moved out of the house because she "couldn't handle what was going on."

On September 9, 2009, upon receiving a request to investigate the incident between Lauren and appellant, Blue Mound Police Department Officer John Funk went to the Fagan Street house. He saw Lauren walking her dog and started a conversation with her. Lauren was embarrassed, and to Officer Funk, she appeared sad. They spoke for about ten minutes, and then appellant came outside and approached Officer Funk. Outside of Lauren's presence, appellant denied knowing why Officer Funk was there, but Officer Funk told him that they had received allegations of inappropriate touching. Officer Funk detained appellant, and Lauren told Officer Funk that she was concerned that appellant would hurt her if she said anything. Eventually, again outside of Lauren's presence, Officer Funk also talked to Andrea, who seemed nervous and hesitant.

Andrea went inside the house and told Lauren "[t]o not tell," and when Lauren came back out, Officer Funk believed that Andrea had coerced Lauren

3

into saying something different than she had originally said. After Officer Funk told Lauren that he needed to hear the truth and informed her about the consequences (including arrest and jail time) that she could face for making a false police report, Lauren changed her story back to what she had first told Officer Funk (that appellant had sexually assaulted her).

Officer Funk arrested appellant. A grand jury indicted appellant for sexual assault of a child. Appellant pled not guilty. The jury found him guilty and assessed his punishment at fourteen years' confinement. He brought this appeal.

**Evidentiary Sufficiency**

In his first point, appellant argues that the evidence is insufficient to sustain his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).[3] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the

---

[3]Appellant challenges both legal and factual sufficiency. But the court of criminal appeals has overruled cases that allowed a factual sufficiency review and has held that there is "no meaningful distinction between the . . . legal-sufficiency standard and the . . . factual-sufficiency standard." *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Accordingly, we apply the *Jackson* standard to appellant's sufficiency point.

evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

To obtain appellant's conviction for sexual assault of a child under the facts of this case, the State was required to prove that Lauren was under seventeen years old when appellant intentionally or knowingly caused her sexual organ to contact his mouth.[4] *See* Tex. Penal Code Ann. § 22.011(a)(2)(C), (c)(1) (Vernon Supp. 2010); *Thompson v. State*, 85 S.W.3d 415, 418 (Tex. App.—Fort Worth

---

[4]At trial, Lauren confirmed that she is not married to appellant. *See* Tex. Penal Code Ann. § 22.011(e)(1).

5

2002), *aff'd*, 108 S.W.3d 287 (Tex. Crim. App. 2003). Appellant argues that the State did not meet its burden of proof because the evidence concerning the sexual assault came from only Lauren, who vacillated before trial about whether the assault occurred; there was no physical evidence substantiating Lauren's testimony; and the State's witnesses raised the issue of whether appellant mistook Lauren for Andrea.

Lauren testified to each element of the offense, and her testimony alone constitutes sufficient evidence to support appellant's conviction. *See, e.g.*, *Halbrook v. State*, 322 S.W.3d 716, 720 (Tex. App.—Texarkana 2010, no pet.); *Johnston v. State*, 230 S.W.3d 450, 455 (Tex. App.—Fort Worth 2007, no pet.); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd). There is no general requirement that the testimony of a minor who is a sexual assault victim be corroborated by medical or physical evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (Vernon 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Hohn v. State*, 538 S.W.2d 619, 621 (Tex. Crim. App. 1976); *Bargas v. State*, 252 S.W.3d 876, 889 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Furthermore, the jury's guilty verdict establishes that despite a potential reduction in Lauren's credibility that could have been associated with her drug use, the jury believed her testimony about the sexual assault and disbelieved any statements she made before trial indicating that the assault did not occur. *See Lugo v. State*, 299 S.W.3d 445, 453 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding that a jury was free to

believe a witness's trial testimony over her prior statement made to the police); *Dornbusch v. State*, 156 S.W.3d 859, 872 (Tex. App.—Corpus Christi 2005, pet. ref'd) ("The jury was entitled to believe the clerk's in-court testimony instead of her prior testimony."); *Hernandez v. State*, 903 S.W.2d 109, 113 (Tex. App.—Fort Worth 1995, pet. ref'd) ("The jury, being the judges of the facts and the credibility of the witnesses, could choose to believe or not believe the witnesses or any portion of their testimony."); *see also Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh'g) (explaining that "[r]econciliation of conflicts and contradictions in the evidence is within the province of the jury").

Also, the jury, in its discretion to weigh the evidence, could have rationally disbelieved appellant's statement, made just after the sexual assault, that he mistakenly believed that Lauren was Andrea, because Lauren testified to other instances of abuse. *See Brown*, 270 S.W.3d at 568. Lauren testified that in 2003, when she was ten years old, appellant came into her bedroom and touched her vagina. He told her that he wanted to show her where her "soft spot" was and that if she "let him do it," he would leave her alone. Lauren told Andrea, and Andrea and Lauren left appellant for two days before returning to live with him.

According to Lauren, Andrea told her to change her story, so in 2007, after Lauren had told authorities what had happened, she signed a sworn statement

7

minimizing the incident.[5]  Lauren also said that appellant promised her a $10,000 car to change her story.  She explained that she thought Andrea "wouldn't care about" her if she did not sign the statement.

The State also presented evidence about a later incident that occurred between Lauren and appellant while they were camping.  According to Lauren, during that incident, appellant tried to touch her "in the front" either above or underneath her clothing.[6]  Further, Lauren said that more than once, appellant sat in their house in his boxers with his penis hanging out.  Lauren also said that she had appellant paint the inside of her window because she suspected that he once watched her while she was getting dressed.

Tarrant County Sheriff's Office Detective Mike Coursey said that appellant, while referring to the camping trip incident, conceded to inappropriately touching someone and "said it was an accident and immediately apologized."  Detective

---

[5]The statement reads in part,

[Appellant] and I would wrestle once a week and I enjoyed it. . . .  I was dressed in my pajamas and was playfully trying to get away from him.  As I did so, his hand touched my private area over my clothing.  His hand was there only an instant.  He apologized and we didn't horseplay or wrestle after that.

. . . Thinking back on this I feel I took it too seriously and that it was an accident.  In my opinion [appellant] never intended this to happen and there was nothing sexual between us.

[6]Lauren's 2007 statement also recited, "[Appellant] did not touch me during the camping incident."

8

Coursey testified that appellant also admitted to inappropriately touching Lauren in her bedroom; appellant said that touching was likewise accidental.

The jury could have chosen to believe Lauren's testimony and disbelieve her 2007 retraction about appellant's pattern of deviant sexual behavior. *See Lugo*, 299 S.W.3d at 453. Thus, the jury could have rationally rejected the theory that appellant was excused from the sexual assault because, on an isolated incident, he mistakenly thought that Lauren was Andrea.

For these reasons, viewing the evidence in the light most favorable to the verdict, we hold that a rational jury could have found that the State proved each element of appellant's sexual assault beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule appellant's first point.

**Allegedly Improper Objections**

In his second point, appellant contends that the trial court erred by allowing Amanda's personal counsel (rather than the prosecutor) to object to questions during her testimony that were unrelated to her constitutional rights.[7] Amanda was in custody when she testified. She was facing three petitions to revoke felony community supervision cases. Before Amanda's testimony began, her counsel stated,

---

[7]Appellant does not urge that the trial court made an incorrect evidentiary ruling connected to one of the objections.

Your Honor, I am Ms. Stegall's attorney and just would like to put on the record that I would object and advise her to take the Fifth in the event that any questions are asked as to any of her pending cases.

And I don't know if the Court would prefer that we do a quick motion in limine as to any of her pending cases or if you would prefer that I would just object during testimony. But I would object in advance, regardless of any questions, regarding her current cases.

The trial court did not directly express its preference regarding the timing of Amanda's counsel's objections. Nonetheless, during cross-examination of Amanda by appellant's counsel, her counsel objected to several questions regarding her criminal cases. Appellant's trial counsel did not complain about the appropriateness of these objections at any stage of the trial court's proceedings.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009); *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002) ("[O]bjections promote the prevention and correction of errors."). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Some violations of a defendant's rights may be raised on appeal without an objection at trial regarding the rights. *Saldano*, 70 S.W.3d at 888–89 (explaining that, for example, jurisdiction over the person and the constitutional prohibition of ex post facto laws are systemic issues that need not be preserved at trial); *see Mendez*, 138 S.W.3d at 342 ("Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only . . . , *all other complaints*, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a).") (emphasis added). But appellant has not cited authority establishing that he has a systemic or waivable-only right to question a witness without encountering objections from the witness's counsel, and we have not located such authority.

Appellant argues that Amanda's counsel's objections prevented thorough cross-examination. The rights of cross-examination and confrontation are forfeited, however, by a failure to object at trial. *Eustis v. State*, 191 S.W.3d 879, 885 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Whitfield v. State*, 137 S.W.3d 687, 692 (Tex. App.—Waco 2004, no pet.).

Thus, we hold that appellant forfeited his right to complain about Amanda's counsel's objections by not seeking to prohibit those objections at trial. *See* Tex. R. App. P. 33.1(a)(1); *Layton*, 280 S.W.3d at 238–39; *Robinson v. State*, 310 S.W.3d 574, 577–78 (Tex. App.—Fort Worth 2010, no pet.). We overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 14, 2011