

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00231-CR

**RUSSELL DON SNEED,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2010-1505-C1

## MEMORANDUM  OPINION

Russell Don Sneed was convicted of the offense of Driving While Intoxicated and sentenced to life in prison as a habitual offender based on pleas of true to two prior convictions.  Sneed complains that the evidence was legally insufficient to establish that one of the prior convictions was final for purposes of enhancement and that the trial court erred by overruling his objection to State's closing argument during the sentencing phase of trial relating to parole.  Because we find that the trial court erred by overruling Sneed's objections regarding the State's closing argument and that the error

was harmful, we reverse the judgment of the trial court and remand to that court for a new trial on punishment.

*Enhancements*

Sneed complains that the evidence was legally insufficient to establish that one of the convictions used for purposes of enhancement was final because the State offered into evidence a judgment from that conviction that affirmatively showed that a notice of appeal had been filed. As a general rule, the State must prove the finality of a conviction before the conviction can be used for enhancement purposes. *See Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007); *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981). However, if a defendant pleads "true" to the enhancement paragraph, generally the State's burden of proof is satisfied, and the defendant cannot complain on appeal that the evidence is insufficient to support the enhancement. *See Harvey*, 611 S.W.2d at 111; *Lugo v. State*, 299 S.W.3d 445, 455-56 (Tex. App.—Fort Worth 2009, pet. ref'd); *Magic v. State*, 217 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Sneed contends, however, that this case falls within an exception to that general rule that occurs when the record affirmatively reflects that the enhancement is improper. *See Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006). Sneed argues that because the judgment in the 1995 case indicates that he filed a notice of appeal, the record affirmatively reflects that the conviction was not final. Certainly, a conviction

that has been appealed is not considered final until it is affirmed by the appellate court and the appellate court's mandate becomes final. *See Fletcher*, 214 S.W.3d at 6 (*quoting Jones v. State*, 711 S.W.2d 634, 636 (Tex. Crim. App. 1986)).

However, we disagree that the 1995 judgment in this case provides no evidence of the finality of the judgment. A final conviction may be shown by a mandate or by any other means of proof showing disposition of the appeal. *See Johnson v. State*, 784 S.W.2d 413, 414 (Tex. Crim. App. 1990). The judgment entered into evidence indicates that a notice of appeal was filed on December 7, 1995. Below that notation, the judgment indicates that the mandate was received on April 14, 1998 and "After Mandate Received, Sentence to Begin Date is: 12/07/1995." This is sufficient to meet the State's prima facie burden regarding finality. We overrule issue one.

*Improper Argument*

The jury is permitted to consider the existence of parole and the fact that a defendant's imposed sentence may be shortened by the operation of that system. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(c) (West 2006). However, the jury is prohibited from considering how parole law and good time would be applied to the particular defendant before them. *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004).

Sneed complains in his second issue that the trial court erred in overruling his objection to improper comments on parole law made by the State in its opening

argument during the punishment phase of his trial. Sneed complains of the following segment of the State's argument:

> The State: … We can't predict how exactly it's going to be applied in this case, but we do know that he will be eligible for parole after he serves one-fourth, or 15, whichever is less. We do know that. Like I said, we know how it was applied to him last time. Last time he got a 40 year sentence. He got out after he did one-fifth. He—not only did he get it at the one-fourth, he got good time and got less than one-fourth.
>
> Sneed:       Your Honor, I'm going to object to him arguing that the jurors should apply the parole law to this specific defendant.
>
> Trial Court: Overruled.
>
> The State: So we know how it was applied to him last time. Last time he only served a fifth of a 40 year sentence. He got eight. So we already know 40 doesn't mean 40. 60 doesn't mean 60, probably. I mean, they could keep him the whole time, but you have to think about, this is a DWI, it's a non-violent crime, prisons are crowded. I mean, who knows what's going to happen? We don't know. We know he's eligible after one-fourth. I wrote an example up there. Just say, for example, you-all decide to give him 60. Okay. One-fourth of 60 is 15 years. That's if he does one-fourth. He's 52 years old now, plus15, that means he'd be—
>
> Sneed: Your Honor, I'm going to have to renew my objection. There is a specific instruction in the charge that prohibits the jury from applying the parole law to this defendant.
>
> The State: I'm just talking about when he would be eligible, Your Honor.
>
> Trial Court: Overruled.
>
> The State: Thank you. So in this case, for example, if you gave him 60, he would become eligible when he's 67 years old. I want to ask you-all, do you-all feel safe with that? Do you-all feel safe letting a person who has been convicted of DWI, I think it was nine times now, back out driving with the rest of us when he's 67? So now not only is he driving drunk, now he's a worse driver, because now he's 67 years old. You know, I hate

to say that. You know, my grandma can't even drive at night now. I know it gets harder to drive, the older you get. You know, he's going to be more dangerous when he's 67 years old than he is now at 52. And you saw what happened at age 52. He rolled his Explorer on the interstate, you know, flipped it. So I just want you-all to think about that. I think— I'm going to tell you-all right now, I don't think 60 is enough.

Sneed argues that the State's argument became improper when it argued that Sneed would be out driving when he was 67 years old if he were given a 60 year sentence.

The jury was properly instructed regarding the existence of parole and good-time credit and Sneed's issue does not complain of the trial court's instructions in the jury charge. Rather, Sneed complains that the State's argument discussing Sneed's being free to drive at age 67 went beyond the permissible purpose of considering eligibility for parole and crossed over into an impermissible request to consider how the parole law would be applied to Sneed in the future. We agree. It is apparent that the State's arguments were specifically directed at Sneed and the notion of keeping him in prison as long as possible because he would be released on parole when the formula is met. Because we find the objections to that argument were erroneously overruled, we must determine whether Sneed was harmed by the improper argument.

Improper jury argument is error of a non-constitutional dimension. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (applying Texas Rule of Appellate Procedure 44.2(b) to improper comments that fall outside of permissible argument). To determine harm, we must determine whether the improper arguments affected a

substantial right.  *See* TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (holding improper closing argument concerning matters outside record is nonconstitutional error).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

In this harm analysis we balance the following three factors: (1) the severity of the misconduct (the prejudicial effect); (2) the measures adopted to cure the misconduct; and, (3) the certainty of punishment assessed absent the misconduct (the likelihood of the same punishment being assessed).  *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (applying balancing factors as set forth in *Mosley* to punishment proceedings in a non-capital case).

*Severity of the Misconduct*

The complained-of statement was surrounded by proper statements regarding Sneed's potential eligibility for parole, which would have been in fifteen years of a sixty year sentence.  However, the State's arguments relating to Sneed driving on the same roads as the jurors at age 67, which was 15 years from Sneed's age at trial, were moderately severe because the State's argument regarding punishment then shifted to an argument for the maximum sentence of life imprisonment, which the jury then assessed.

*Curative Measures*

The trial court overruled each of Sneed's objections to the improper argument, therefore, the trial court did not directly make any curative measures.  Later in its closing argument, co-counsel for the State briefly touched on the parole law properly without objection to inform the jury that they could consider the one-fourth rule while making a plea for life imprisonment as the maximum the jury could impose to do their part to prevent future intoxication offenses by Sneed.  This did little, if anything, to cure the error.

We note that the jury charge contained a proper instruction to the jury not to consider how good-conduct time and parole would be applied to Sneed.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(c) (West 2006); *Hawkins*, 135 S.W.3d at 84 ("The law specifically provides that the jury may consider the existence of parole law and good time in making its punishment determination; the jury is simply prohibited from considering how parole law and good time would be applied to a particular defendant.").  There is a presumption that the jury followed the trial court's written instructions regarding parole law and good-conduct time absent any indication to the contrary.  *See Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim. App. 1988) (op. on reh'g).  The use of the proper instruction is a factor to consider in determining curative measures.  *See Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004).

*Likelihood of Sentence Absent the Improper Argument*

Sneed was sentenced as a habitual offender, having pled true to two enhancement allegations, and therefore, the range of punishment available to the jury was twenty-five to ninety-nine years in prison or life. TEX. PEN. CODE ANN. § 12.42 (West Supp. 2011). Sneed was sentenced to the maximum sentence allowed by law. We agree that there was other evidence to support that determination. Sneed was involved in a single-vehicle accident and was determined to have a blood alcohol content of .26 grams per 100 milliliters of blood, which was well over three times the legal limit. Sneed had been previously convicted of the offense of driving while intoxicated eight times, and had been sentenced to as much as forty (40) years in prison for those offenses. Sneed had six other criminal convictions as well for misdemeanor theft, forgery, driving while license suspended, and unauthorized use of a motor vehicle.

Sneed and his wife testified during the punishment phase regarding their stability and plans for the future, Sneed's alcoholism and parents' alcoholism, and his military history as a Navy Seal during punishment in an effort to mitigate the sentence. In addition, no one was involved or injured in the accident other than Sneed. We believe that there is some doubt that the same sentence would have been assessed without the overruling of the objection to the improper argument.

When we balance the above factors, we cannot say that the trial court's error in overruling Sneed's objection to the State's improper argument was harmless; that is,

that it did not have a substantial effect on the jury's verdict.  *See* TEX. R. APP. P. 44.2(b).

Issue two is sustained.

*Conclusion*

Because the trial court erred by overruling Sneed's objections to the State's improper jury argument and the error was harmful, we reverse the judgment of the trial court and remand to that court for a new trial on punishment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed July 12, 2012
Do not publish
[CRPM]