

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00393-CR

STEPHEN LEONARD SMITH                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

### MEMORANDUM OPINION[1]

----------

Although the indictment was amended to charge Appellant Stephen Leonard Smith with possession of anhydrous ammonia with intent to manufacture a controlled substance, specifically, methamphetamine, when he entered his guilty plea, the trial court instructed the jury to convict him of and to assess his punishment for "Possession *or Transportation* of Certain Chemicals with Intent to Manufacture a Controlled Substance," enhanced by two prior

[1]*See* Tex. R. App. P. 47.4.

convictions.  [Emphasis added.]  The trial court also instructed the jury on the law of parties.  The jury convicted Appellant and assessed his punishment at seventy-five years' confinement.  The trial court sentenced him accordingly.  In two issues, Appellant challenges the trial court's denial of his motion to suppress and contends that the trial court abused its discretion by overruling his objection to a sitting juror.  Because the trial court committed no reversible error, we affirm the trial court's judgment.

## I.  Limited Right of Appeal

The record shows that Appellant pled guilty in exchange for the State's agreement to abandon Count One of its indictment, which alleged that he had manufactured methamphetamine.  Consequently, despite the trial court's incorrect certification that this is not a plea-bargained case and that Appellant has the right of appeal, we hold that the case is a "charge-bargained" case, that the written motion to suppress was filed and ruled on before trial, and that therefore we may entertain Appellant's suppression issue.[2]

The State appears to agree with this holding but argues in the alternative that if we do not hold this case to be a charge-bargained case, then Appellant has forfeited his suppression issue by pleading guilty before the jury.  Although

_____

[2]*See* Tex. R. App. P. 25.2(a)(2); *Kennedy v. State*, 297 S.W.3d 338, 342 (Tex. Crim. App. 2009) (applying *Shankle* analysis to allow appeal of ruling on motion to suppress); *Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003) (holding that charge bargain that "effectively puts a cap on punishment" is a bargain governed by rule 25.2(a)(2)).

we do not need to reach the State's alternative argument because of our holding that this is a charge-bargained case, we note for the sake of clarity that the Texas Court of Criminal Appeals has made clear in *Kennedy*, delivered later than all cases relied on by the State in its alternative argument, that if a charge bargain is present, rule 25.2 controls over the line of cases governing guilty pleas.[3]

The absence of evidence of the trial court's granting Appellant permission to appeal, however, indicates that Appellant has no right to raise a jury selection issue on appeal; we therefore may not entertain it.[4] We consequently dismiss his second issue.

## II. Motion to Suppress

In his first issue, Appellant argues that the trial court erred by not suppressing the evidence seized in his apartment pursuant to a search warrant when the police first entered his apartment without a warrant, invitation, or consent and under exigent circumstances created by the police. The State argues that Appellant did not preserve this argument. We disagree.

Before entering his guilty plea, Appellant filed a motion to suppress any and all tangible evidence seized by law enforcement officers in connection with the investigation of the case and all evidence relating to the arrest, arguing that

---

[3]*Kennedy*, 297 S.W.3d at 341–42.

[4]*See* Tex. R. App. P. 25.2(a)(2); *Shankle*, 119 S.W.3d at 814.

3

the search and seizure of his person and the evidence violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, sections nine, ten, and nineteen of the Texas Constitution, and article 38.23 of the code of criminal procedure. The bases of his motion were that (1) the supporting affidavit was improperly and illegally executed; (2) the supporting affidavit does not reflect sufficient probable cause because it lacks sufficient underlying circumstances to permit the conclusion that the alleged contraband was at the claimed location and fatally fails to state sufficient underlying circumstances to establish the affiant's credibility; (3) the supporting affidavit does not show sufficient probable cause because the issuing magistrate did not have a substantial basis for concluding that the alleged contraband would be found in a particular place; and (4) the police began the search and seizure before the warrant was issued and without Appellant's consent. At the suppression hearing, Appellant's trial counsel distinctively argued that the search began at 3:00 a.m., but the warrant was not signed until 4:50 a.m. Absent consent, only exigent circumstances would have allowed such a warrantless search and seizure under the facts as portrayed by Appellant,[5] and it would have been the State's burden to prove any exigency.[6] Consequently, Appellant's

---

[5] *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

[6] *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990); *Hubert v. State*, 312 S.W.3d 554, 561–62 (Tex. Crim. App. 2010).

argument on appeal that the State created exigent circumstances, that is, that no valid exigency existed to support the alleged warrantless search, is not an argument distinctive from his argument below but rather the same argument; he merely anticipates the State's argument that exigent circumstances justified the police's warrantless entry into the home, an argument that the State in fact makes. Because we hold that Appellant's issue on appeal is merely a more refined statement of his argument in his motion to suppress and hearing thereof, we shall address it.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[7] In reviewing the trial court's decision, we do not engage in our own factual review.[8] The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[9] Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility

---

[7]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[8]*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

[9]*Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

and demeanor.[10] But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.[11]

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.[12] When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.[13] We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.[14]

In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.[15] But

---

[10]*Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[11]*Amador*, 221 S.W.3d at 673; *Estrada*, 154 S.W.3d at 607; *Johnson*, 68 S.W.3d at 652–53.

[12]*Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

[13]*Kelly*, 204 S.W.3d at 818–19.

[14]*Id.* at 818.

[15]*See Gutierrez*, 221 S.W.3d at 687; *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996).

6

this general rule is inapplicable when the parties consensually relitigated the suppression issue during trial on the merits.[16]  If the State raised the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have elected to re-open the evidence, and we may consider the relevant trial testimony in our review.[17]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[18]

The Fourth Amendment protects against unreasonable searches and seizures by government officials.[19]  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.[20]  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.[21]  Once the defendant has made this showing, the burden of proof shifts

---

[16]*Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 809.

[17]*Rachal*, 917 S.W.2d at 809.

[18]*State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

[19]U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24.

[20]*Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009).

[21]*Amador*, 221 S.W.3d at 672.

to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.[22]

Whether a search is reasonable is a question of law that we review de novo.[23] Reasonableness is measured by examining the totality of the circumstances.[24] It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions.[25] A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement.[26]

In assessing the sufficiency of an affidavit for an arrest or a search warrant, the reviewing court is limited to the four corners of the affidavit.[27] The reviewing court should interpret the affidavit in a common sense and realistic

---

[22]*Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

[23]*Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

[24]*Id.* at 63.

[25]*Id.*

[26]*McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862.

[27]*Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993).

manner, recognizing that the magistrate was permitted to draw reasonable inferences.[28]

Unconstitutional portions of a search warrant do not necessarily invalidate the entire warrant or taint all of the evidence seized pursuant to the warrant.[29]  If only certain portions of a search warrant are invalid, only the evidence gathered pursuant to the offending portions is tainted.[30]

In the affidavit in support of the search and arrest warrant leading to Appellant's arrest, Wichita Falls Police Officer Karen Wade charged that Appellant and others were manufacturing methamphetamine inside apartment 10A at 5232 Professional Drive.  She stated that on March 12, 2008, Wichita Falls police officers Tony Ozuna and Charles Roberts were informed by tactical officers about a chemical odor coming from an apartment in the area of 5232 Professional Drive and that upon investigation, the officers were able to "narrow the smell to be emitting from apartment 10 A."  The officers put the apartment under surveillance and saw a white male twice exit the apartment and put items in a trash dumpster.  The officers decided to investigate further by conducting a "knock and talk" at the apartment.  When their knock was answered, the officers identified themselves, and a male suspect, later identified as Charles Daniels,

---

[28]*Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

[29]*Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996).

[30]*Id.*

attempted to flee. He was detained on the balcony outside the apartment with the assistance of several officers and the use of a taser.

Roberts did not testify at the hearing on the motion to suppress. Ozuna did testify at the hearing. He stated that in the early morning hours of March 12, 2008, while out on patrol, he drove through the Highland Oaks apartment complex. He had the windows down on the patrol car, and as he drove past building 5232, he could smell ether and ammonia. From his training as a certified clandestine lab investigator, he concluded that someone in the area "was cooking meth." He determined that the smell was coming from the air vent of apartment 10A. Based on that information, he and Roberts decided to set up surveillance on the apartment. Ozuna saw an individual come out of the apartment twice, walk over to a trash dumpster, and throw a white trash bag into the dumpster. After over an hour had passed, the officers decided to "do a knock-and-talk" with the apartment's residents, that is, knock on the door, identify themselves as officers, and notify the occupants of "the reason [the officers were] there." While standing at the front door, Ozuna could smell the odor of ether and ammonia coming from the door.

Ozuna testified at the hearing that when he and the other officers went to the door for a "knock and talk," Daniels, one of the men inside the apartment, ran and briefly struggled with the "several" officers who were trying to "subdue" him without a warrant. Ozuna testified that Roberts went into the apartment to secure the evidence and for officer safety. Similarly, at trial, Ozuna testified that when

10

Daniels ran out of the apartment, Roberts "instinctively" entered the apartment, yelling, "Police!"  He entered with his weapon drawn, pointed the weapon at a male and female inside the living room of the apartment, and ordered them to get on the floor.

Roberts testified at trial that he "went ahead and entered to—to first, clear the apartment for officers' safety.  Make sure that there was no one inside going to hurt us."  He also implied that he needed to secure the occupants and prevent the destruction of evidence.  He testified that he also entered the apartment to determine if there were any children inside, to get everybody out, and to secure everything.  While Roberts was "clearing the apartment," he discovered Appellant in the back bedroom, sitting on the side of the bed.  Roberts ordered Appellant to get on the floor, and Appellant complied.  Roberts then began to handcuff everyone in the apartment.

This "knock and talk" occurred at approximately 3:00 a.m.  After the officers entered, and before they secured the warrant, they discovered that no one was cooking methamphetamine inside the apartment as they had originally supposed.  Nor were any drugs found on Appellant's person.  But after the officers read the handcuffed persons a *Miranda* warning, one of them, Teresa Reid, stated that there was methamphetamine inside the residence.

After everyone was handcuffed and the premises were secured, the officers on the scene called narcotics officers to secure a warrant.

11

Wade testified that on the morning of March 12, she responded to a call from Sergeant Robinett reporting a meth lab.  She found two plastic bags in the dumpster, one containing an HCL generator and the other containing lithium batteries, filters, and a can of starter fluid.  After speaking with Reid, the person in the apartment who told the police that methamphetamine was in the apartment, Wade typed up an affidavit and obtained a search warrant.  She then returned to the apartment, and the officers conducted a search.  The officers found a package of lithium batteries, baggies of powdered methamphetamine, and a jar of liquid methamphetamine.  They also found mail with Appellant's name on it and a fire extinguisher that tested positive for anhydrous ammonia.

Wade's affidavit supporting the warrant also provides, and testimony confirms, that officers checked the dumpsters, where they located an HCL generator, lithium battery trash, pseudoephedrine packages, and used filters.  The affidavit points out that all of these items were known to the affiant to be used in the manufacture of methamphetamine.  Wade stated in the affidavit that based on her experience as a narcotics officer, she presumed that records of drug deals would be found on the premises, as well as tools of the trade (such as scales, cutting equipment, and plastic baggies), and possibly weapons.  She also alleged that the premises were in charge of and controlled by the persons named in the affidavit, including Appellant.  The warrant was issued at 4:50 a.m. on March 12, 2008, almost two hours after the "knock and talk."

The search and seizure log lists evidence seized by Wade, Robinett, and Officer Bobby Dilbeck and gives the date and time as "3-12-08 0300." Wade testified that the log states a time of 3:00 a.m. because she "wrote down what time the initial contact with the persons in the apartment happened. Not actually what time [the police] began [their] search."

It is problematic that the police officers here pulled their weapons, entered the apartment, handcuffed its occupants, and searched them under the guise of a voluntary "knock and talk." The "knock and talk" is supposed to be an opportunity for the police to determine whether occupants of a residence are willing to talk to the police; it is a form of consensual encounter. The persons involved are supposed to be free to refuse to talk to the police and free to refuse to allow them to enter.[31] Were the "knock and talk" the only source of the evidence, the outcome of this case would likely be different.

We also note that the odor coming from the apartment was stronger after the police entered the open door, but there was nothing in plain view to indicate that methamphetamine was being cooked. Except for the methamphetamine found on Daniels, the officers had exactly as much information after they entered under the guise of a "knock and talk" as they did before they entered.

The first drugs, however, were found on the person of Daniels. Appellant does not and cannot challenge the drugs found on Daniels because he had no

---

[31]*Bumper v. North Carolina*, 391 U.S. 543, 548–50, 88 S. Ct. 1788, 1791–92 (1968).

13

expectation of privacy in the person of Daniels.[32]  Further, Daniels was arrested outside the apartment.  Too, the surveillance was properly conducted, and the abandoned property that the police found in the dumpster—evidence of the manufacture of methamphetamine—was evidence that they personally could connect to a person inside the apartment.[33]  The contents of the bags the police found in the dumpster, the odor coming from the apartment, and the man leaving the apartment, dumping the trash bags, and returning to the apartment when taken together are sufficient to justify a warrant to search the apartment in question for methamphetamine or the precursors for the manufacture of methamphetamine.

Although Appellant clearly points out and complains about the nature of the conduct of the police, he does not argue that their conduct tainted the discovery of the contents of the garbage bags.  We, therefore, have no need to address whether the taint was attenuated.[34]

---

[32]*See Kothe*, 152 S.W.3d at 59.

[33]*See Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003) (providing that garbage or trash is considered abandoned property and that the police may freely search it without a warrant).

[34]*See* Tex. R. App. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *Mosley v. State*, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

14

Because the evidence in the dumpster was sufficient to support a warrant, and because Appellant does not argue that discovery of the contents of the garbage bags was tainted by the conduct of the police before they secured the warrant, we hold that the contents of the garbage bags found in the dumpster were sufficiently connected to at least one person inside the apartment in question and, consequently, that the trial court did not err by denying Appellant's motion to suppress. Under the limited facts of this case, we overrule Appellant's first issue.

## III. Conclusion

Having overruled Appellant's first issue and having dismissed his remaining issue, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

LIVINGSTON, C.J. filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 18, 2011

15



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00393-CR

STEPHEN LEONARD SMITH          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

## CONCURRING MEMORANDUM OPINION[1]

----------

I concur with the majority's ultimate disposition of the appeal but would decide part of it on a different basis. The first issue in appellant's brief concerns the trial court's denial of his motion to suppress. Appellant asks whether the trial court erred by not suppressing evidence found in appellant's apartment under a search warrant because before the issuance of the warrant, officers entered the apartment under exigent circumstances that they created and without consent.

---
[1]*See* Tex. R. App. P. 47.4.

The body of the brief focuses on appellant's contention that the officers' warrantless nighttime entry into his home resulted from an unreasonable "knock and talk" investigative technique.[2]

The grounds of appellant's motion to suppress in the trial court were the following: (1) the search warrant was invalid because of an improper and illegal affidavit that did not establish probable cause for issuing the warrant or show that the affiant was credible, and (2) officers began searching and seizing evidence without consent before the warrant was signed. In the written motion, appellant did not make any argument regarding the reasonableness of the officers' knock and talk or about whether the State created exigent circumstances.

During the hearing on the motion, appellant argued that the evidence should be suppressed because (1) the warrant was invalid since it was not supported by probable cause, (2) the warrant did not particularly describe the place to be searched or items to be seized, and (3) the police's search and seizure record showed that items were seized at 3:00 a.m. while the warrant was not signed until 4:50 a.m. Appellant described the third argument as a "technicality." His counsel said, "My . . . problem is the search log. Clearly, I mean, in black and white, Judge Brotherton signed this warrant at 4:50 a.m.

---

[2]In the "Summary of Argument" section of his brief, appellant contends that the trial court erred by "not suppressing the evidence . . . because the seizure of the evidence was the result of an unlawful, warrantless raid and entry into [a]ppellant's home based on an unreasonable 'knock and talk' investigative technique conducted at 3:00 a.m."

[The] seizure log . . . says things were being seized at 3:00 a.m." A detective testified that when she completed the search and seizure record, which contained a description of the items that the police found in the apartment, she mistakenly wrote the time of the police's initial contact with appellant rather than the time the search began. Nothing in the record of the hearing on appellant's motion to suppress indicates that he predicated his one-sentence written argument about the officers' "searching and seizing evidence without consent before any lawful warrant was signed" on anything other than the technical discrepancy between the time that the magistrate signed the warrant and the time of the search that the detective erroneously put into the search and seizure record.

Thus, appellant did not argue in the trial court, either in the written motion or at the hearing on the motion, that evidence should have been suppressed because the officers' initial entry into appellant's apartment was unreasonable or unconstitutional. The majority holds, however, that appellant's first issue on appeal has been preserved and addresses the issue at length. *See* Majority Op. at 3–15. Based on the facts described above, I disagree. We should hold that the issue has been forfeited and resolve this appeal on the other remaining issue.[3] *See* Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39

---

[3]The State correctly observes that appellant's trial counsel "presented nothing that would have put the trial court on notice that he was seeking to suppress evidence based on the theory that the 'knock and talk' was

3

(Tex. Crim. App. 2009); *Lugo v. State*, 299 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009, pet. ref'd) ("[T]he complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited."); *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) ("Appellant's global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he now makes on appeal."); *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (explaining that an appellate court normally could not reverse a trial court's suppression ruling on a theory that might have been applicable to the case but was not raised).

Because I would affirm on the other basis addressed by the majority, I join in the judgment affirming appellant's conviction.

TERRIE LIVINGSTON
CHIEF JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 18, 2011

---

unreasonable." We should not address an issue that has not been preserved. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).