02-09-393-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00393-CR

 

 


 
 
 Stephen Leonard Smith
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 78th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Although
the indictment was amended to charge Appellant Stephen Leonard Smith with
possession of anhydrous ammonia with intent to manufacture a controlled
substance, specifically, methamphetamine, when he entered his guilty plea, the
trial court instructed the jury to convict him of and to assess his punishment
for “Possession or Transportation of
Certain Chemicals with Intent to Manufacture a Controlled Substance,” enhanced
by two prior convictions.  [Emphasis added.]  The trial court also instructed
the jury on the law of parties.  The jury convicted Appellant and assessed his
punishment at seventy-five years’ confinement.  The trial court sentenced him
accordingly.  In two issues, Appellant challenges the trial court’s denial of
his motion to suppress and contends that the trial court abused its discretion
by overruling his objection to a sitting juror.  Because the trial court
committed no reversible error, we affirm the trial court’s judgment.

I. 
Limited Right of Appeal

The
record shows that Appellant pled guilty in exchange for the State’s agreement
to abandon Count One of its indictment, which alleged that he had manufactured
methamphetamine.  Consequently, despite the trial court’s incorrect
certification that this is not a plea-bargained case and that Appellant has the
right of appeal, we hold that the case is a “charge-bargained” case, that the
written motion to suppress was filed and ruled on before trial, and that
therefore we may entertain Appellant’s suppression issue.[2]

The
State appears to agree with this holding but argues in the alternative that if
we do not hold this case to be a charge-bargained case, then Appellant has
forfeited his suppression issue by pleading guilty before the jury.  Although
we do not need to reach the State’s alternative argument because of our holding
that this is a charge-bargained case, we note for the sake of clarity that the
Texas Court of Criminal Appeals has made clear in Kennedy, delivered
later than all cases relied on by the State in its alternative argument, that
if a charge bargain is present, rule 25.2 controls over the line of cases
governing guilty pleas.[3] 

The
absence of evidence of the trial court’s granting Appellant permission to
appeal, however, indicates that Appellant has no right to raise a jury
selection issue on appeal; we therefore may not entertain it.[4] 
We consequently dismiss his second issue.

II. 
Motion to Suppress

In
his first issue, Appellant argues that the trial court erred by not suppressing
the evidence seized in his apartment pursuant to a search warrant when the
police first entered his apartment without a warrant, invitation, or consent and
under exigent circumstances created by the police.  The State argues that
Appellant did not preserve this argument.  We disagree.

Before
entering his guilty plea, Appellant filed a motion to suppress any and
all tangible evidence seized by law enforcement officers in connection with the
investigation of the case and all evidence relating to the arrest, arguing that
the search and seizure of his person and the evidence violated his rights under
the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution, Article I, sections nine, ten, and nineteen of the Texas
Constitution, and article 38.23 of the code of criminal procedure.  The bases
of his motion were that (1) the supporting affidavit was improperly and
illegally executed; (2) the supporting affidavit does not reflect sufficient
probable cause because it lacks sufficient underlying circumstances to permit
the conclusion that the alleged contraband was at the claimed location and
fatally fails to state sufficient underlying circumstances to establish the
affiant’s credibility; (3) the supporting affidavit does not show sufficient
probable cause because the issuing magistrate did not have a substantial basis
for concluding that the alleged contraband would be found in a particular place;
and (4) the police began the search and seizure before the warrant was issued
and without Appellant’s consent.  At the suppression hearing, Appellant’s trial
counsel distinctively argued that the search began at 3:00 a.m., but the
warrant was not signed until 4:50 a.m.  Absent consent, only exigent
circumstances would have allowed such a warrantless search and seizure under
the facts as portrayed by Appellant,[5] and
it would have been the State’s burden to prove any exigency.[6] 
Consequently, Appellant’s argument on appeal that the State created exigent
circumstances, that is, that no valid exigency existed to support the alleged
warrantless search, is not an argument distinctive from his argument below but
rather the same argument; he merely anticipates the State’s argument that
exigent circumstances justified the police’s warrantless entry into the home,
an argument that the State in fact makes.  Because we hold that Appellant’s
issue on appeal is merely a more refined statement of his argument in his motion
to suppress and hearing thereof, we shall address it.

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.[7] 
In reviewing the trial court’s decision, we do not engage in our own factual
review.[8] 
The trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.[9]  Therefore, we give almost
total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.[10] 
But when application-of-law-to-fact questions do not turn on the credibility
and demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.[11]

Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.[12] 
When the trial court makes explicit fact findings, we determine whether the
evidence, when viewed in the light most favorable to the trial court’s ruling,
supports those fact findings.[13] 
We then review the trial court’s legal ruling de novo unless its explicit
fact findings that are supported by the record are also dispositive of the
legal ruling.[14]

In
determining whether a trial court’s decision is supported by the record, we
generally consider only evidence adduced at the suppression hearing because the
ruling was based on it rather than evidence introduced later.[15]  But this general rule is
inapplicable when the parties consensually relitigated the suppression issue
during trial on the merits.[16] 
If the State raised the issue at trial either without objection or with
subsequent participation in the inquiry by the defense, the defendant is deemed
to have elected to re-open the evidence, and we may consider the relevant trial
testimony in our review.[17]

We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.[18]

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.[19] 
To suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.[20] 
A defendant satisfies this burden by establishing that a search or seizure
occurred without a warrant.[21] 
Once the defendant has made this showing, the burden of proof shifts to the
State, which is then required to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.[22]

Whether
a search is reasonable is a question of law that we review de novo.[23]  Reasonableness
is measured by examining the totality of the circumstances.[24]  It requires a balancing of
the public interest and the individual’s right to be free from arbitrary detentions
and intrusions.[25] 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the “specifically defined and well-established” exceptions
to the warrant requirement.[26]

In
assessing the sufficiency of an affidavit for an arrest or a search warrant,
the reviewing court is limited to the four corners of the affidavit.[27] 
The reviewing court should interpret the affidavit in a common sense and
realistic manner, recognizing that the magistrate was permitted to draw
reasonable inferences.[28]

Unconstitutional
portions of a search warrant do not necessarily invalidate the entire warrant
or taint all of the evidence seized pursuant to the warrant.[29]  If
only certain portions of a search warrant are invalid, only the evidence
gathered pursuant to the offending portions is tainted.[30]

In
the affidavit in support of the search and arrest warrant leading to
Appellant’s arrest, Wichita Falls Police Officer Karen Wade charged that
Appellant and others were manufacturing methamphetamine inside apartment 10A at
5232 Professional Drive.  She stated that on March 12, 2008, Wichita Falls
police officers Tony Ozuna and Charles Roberts were informed by tactical
officers about a chemical odor coming from an apartment in the area of 5232
Professional Drive and that upon investigation, the officers were able to
“narrow the smell to be emitting from apartment 10 A.”  The officers put the
apartment under surveillance and saw a white male twice exit the apartment and
put items in a trash dumpster.  The officers decided to investigate further by
conducting a “knock and talk” at the apartment.  When their knock was answered,
the officers identified themselves, and a male suspect, later identified as
Charles Daniels, attempted to flee.  He was detained on the balcony outside the
apartment with the assistance of several officers and the use of a taser.

Roberts
did not testify at the hearing on the motion to suppress.  Ozuna did testify at
the hearing.  He stated that in the early morning hours of March 12, 2008,
while out on patrol, he drove through the Highland Oaks apartment complex.  He
had the windows down on the patrol car, and as he drove past building 5232, he
could smell ether and ammonia.  From his training as a certified clandestine
lab investigator, he concluded that someone in the area “was cooking meth.”  He
determined that the smell was coming from the air vent of apartment 10A.  Based
on that information, he and Roberts decided to set up surveillance on the apartment. 
Ozuna saw an individual come out of the apartment twice, walk over to a trash
dumpster, and throw a white trash bag into the dumpster.  After over an hour
had passed, the officers decided to “do a knock-and-talk” with the apartment’s
residents, that is, knock on the door, identify themselves as officers, and
notify the occupants of “the reason [the officers were] there.”  While standing
at the front door, Ozuna could smell the odor of ether and ammonia coming from
the door.

Ozuna
testified at the hearing that when he and the other officers went to the door
for a “knock and talk,” Daniels, one of the men inside the apartment, ran and
briefly struggled with the “several” officers who were trying to “subdue” him
without a warrant.  Ozuna testified that Roberts went into the apartment to
secure the evidence and for officer safety.  Similarly, at trial, Ozuna
testified that when Daniels ran out of the apartment, Roberts “instinctively”
entered the apartment, yelling, “Police!”  He entered with his weapon drawn,
pointed the weapon at a male and female inside the living room of the
apartment, and ordered them to get on the floor.

Roberts
testified at trial that he “went ahead and entered to—to first, clear the
apartment for officers’ safety.  Make sure that there was no one inside going
to hurt us.”  He also implied that he needed to secure the occupants and
prevent the destruction of evidence.  He testified that he also entered the
apartment to determine if there were any children inside, to get everybody out,
and to secure everything.  While Roberts was “clearing the apartment,” he
discovered Appellant in the back bedroom, sitting on the side of the bed. 
Roberts ordered Appellant to get on the floor, and Appellant complied.  Roberts
then began to handcuff everyone in the apartment.

This
“knock and talk” occurred at approximately 3:00 a.m.  After the officers
entered, and before they secured the warrant, they discovered that no one was
cooking methamphetamine inside the apartment as they had originally supposed.  Nor
were any drugs found on Appellant’s person.  But after the officers read the
handcuffed persons a Miranda warning, one of them, Teresa Reid, stated
that there was methamphetamine inside the residence.

After
everyone was handcuffed and the premises were secured, the officers on the
scene called narcotics officers to secure a warrant.

Wade
testified that on the morning of March 12, she responded to a call from
Sergeant Robinett reporting a meth lab.  She found two plastic bags in the
dumpster, one containing an HCL generator and the other containing lithium
batteries, filters, and a can of starter fluid.  After speaking with Reid, the
person in the apartment who told the police that methamphetamine was in the
apartment, Wade typed up an affidavit and obtained a search warrant.  She then
returned to the apartment, and the officers conducted a search.  The officers
found a package of lithium batteries, baggies of powdered methamphetamine, and
a jar of liquid methamphetamine.  They also found mail with Appellant’s name on
it and a fire extinguisher that tested positive for anhydrous ammonia.

Wade’s
affidavit supporting the warrant also provides, and testimony confirms,
that officers checked the dumpsters, where they located an HCL generator,
lithium battery trash, pseudoephedrine packages, and used filters.  The
affidavit points out that all of these items were known to the affiant to be
used in the manufacture of methamphetamine.  Wade stated in the affidavit that
based on her experience as a narcotics officer, she presumed that records of
drug deals would be found on the premises, as well as tools of the trade (such
as scales, cutting equipment, and plastic baggies), and possibly weapons.  She
also alleged that the premises were in charge of and controlled by the persons
named in the affidavit, including Appellant.  The warrant was issued at 4:50
a.m. on March 12, 2008, almost two hours after the “knock and talk.”

The
search and seizure log lists evidence seized by Wade, Robinett, and Officer
Bobby Dilbeck and gives the date and time as “3-12-08 0300.”  Wade testified
that the log states a time of 3:00 a.m. because she “wrote down what time the
initial contact with the persons in the apartment happened.  Not actually what
time [the police] began [their] search.”

It
is problematic that the police officers here pulled their weapons, entered the
apartment, handcuffed its occupants, and searched them under the guise of a
voluntary “knock and talk.”  The “knock and talk” is supposed to be an
opportunity for the police to determine whether occupants of a residence are
willing to talk to the police; it is a form of consensual encounter.  The
persons involved are supposed to be free to refuse to talk to the police and
free to refuse to allow them to enter.[31] 
Were the “knock and talk” the only source of the evidence, the outcome of this
case would likely be different.

We
also note that the odor coming from the apartment was stronger after the police
entered the open door, but there was nothing in plain view to indicate that
methamphetamine was being cooked.  Except for the methamphetamine found on
Daniels, the officers had exactly as much information after they entered under
the guise of a “knock and talk” as they did before they entered.

The
first drugs, however, were found on the person of Daniels.  Appellant does not
and cannot challenge the drugs found on Daniels because he had no expectation
of privacy in the person of Daniels.[32] 
Further, Daniels was arrested outside the apartment.  Too, the surveillance was
properly conducted, and the abandoned property that the police found in the
dumpster—evidence
of the manufacture of methamphetamine—was evidence that they personally could
connect to a person inside the apartment.[33] 
The contents of the bags the police found in the dumpster, the odor coming from
the apartment, and the man leaving the apartment, dumping the trash bags, and
returning to the apartment when taken together are sufficient to justify a
warrant to search the apartment in question for methamphetamine or the
precursors for the manufacture of methamphetamine.

Although
Appellant clearly points out and complains about the nature of the conduct of
the police, he does not argue that their conduct tainted the discovery of the
contents of the garbage bags.  We, therefore, have no need to address whether
the taint was attenuated.[34]

Because
the evidence in the dumpster was sufficient to support a warrant, and because
Appellant does not argue that discovery of the contents of the garbage bags was
tainted by the conduct of the police before they secured the warrant, we hold
that the contents of the garbage bags found in the dumpster were sufficiently
connected to at least one person inside the apartment in question and,
consequently, that the trial court did not err by denying Appellant’s motion to
suppress.  Under the limited facts of this case, we overrule Appellant’s first
issue.

III. 
Conclusion

Having
overruled Appellant’s first issue and having dismissed his remaining issue, we
affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MCCOY, JJ.

 

LIVINGSTON,
C.J. filed a concurring opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 18, 2011


 
 
 
 


 

 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00393-CR

 

 


 
 
 STEPHEN LEONARD
 SMITH
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 the state of texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 78th
District Court OF WICHITA COUNTY

----------

CONCURRING
MEMORANDUM OPINION[35]

----------

I
concur with the majority’s ultimate disposition of the appeal but would decide
part of it on a different basis.  The first issue in appellant’s brief concerns
the trial court’s denial of his motion to suppress.  Appellant asks whether the
trial court erred by not suppressing evidence found in appellant’s apartment
under a search warrant because before the issuance of the warrant, officers
entered the apartment under exigent circumstances that they created and without
consent.  The body of the brief focuses on appellant’s contention that the
officers’ warrantless nighttime entry into his home resulted from an
unreasonable “knock and talk” investigative technique.[36]

The
grounds of appellant’s motion to suppress in the trial court were the
following:  (1) the search warrant was invalid because of an improper and
illegal affidavit that did not establish probable cause for issuing the warrant
or show that the affiant was credible, and (2) officers began searching
and seizing evidence without consent before the warrant was signed.  In the
written motion, appellant did not make any argument regarding the
reasonableness of the officers’ knock and talk or about whether the State
created exigent circumstances.

During
the hearing on the motion, appellant argued that the evidence should be
suppressed because (1) the warrant was invalid since it was not supported
by probable cause, (2) the warrant did not particularly describe the place
to be searched or items to be seized, and (3) the police’s search and
seizure record showed that items were seized at 3:00 a.m. while the warrant was
not signed until 4:50 a.m.  Appellant described the third argument as a
“technicality.”  His counsel said, “My . . . problem is the search log. 
Clearly, I mean, in black and white, Judge Brotherton signed this warrant at
4:50 a.m.  [The] seizure log . . . says things were being seized at 3:00 a.m.” 
A detective testified that when she completed the search and seizure record,
which contained a description of the items that the police found in the
apartment, she mistakenly wrote the time of the police’s initial contact with
appellant rather than the time the search began.  Nothing in the record of the
hearing on appellant’s motion to suppress indicates that he predicated his
one-sentence written argument about the officers’ “searching and seizing
evidence without consent before any lawful warrant was signed” on anything
other than the technical discrepancy between the time that the magistrate
signed the warrant and the time of the search that the detective erroneously
put into the search and seizure record.

Thus,
appellant did not argue in the trial court, either in the written motion or at
the hearing on the motion, that evidence should have been suppressed because
the officers’ initial entry into appellant’s apartment was unreasonable or
unconstitutional.  The majority holds, however, that appellant’s first issue on
appeal has been preserved and addresses the issue at length.  See
Majority Op. at 3–15.  Based on the facts described above, I disagree.  We
should hold that the issue has been forfeited and resolve this appeal on the
other remaining issue.[37]  See Tex. R. App.
P. 33.1(a)(1); Layton v. State, 280 S.W.3d 235, 238–39 (Tex. Crim. App.
2009); Lugo v. State, 299 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009,
pet. ref’d) (“[T]he complaint made on appeal must comport with the complaint
made in the trial court or the error is forfeited.”); see also Swain v.
State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (“Appellant’s global
statements in his pretrial motion to suppress were not sufficiently specific to
preserve the arguments he now makes on appeal.”); Martinez v. State, 91
S.W.3d 331, 336 (Tex. Crim. App. 2002) (explaining that an appellate court
normally could not reverse a trial court’s suppression ruling on a theory that
might have been applicable to the case but was not raised).

Because
I would affirm on the other basis addressed by the majority, I join in the
judgment affirming appellant’s conviction.

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 18, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P.
25.2(a)(2); Kennedy v. State, 297 S.W.3d 338, 342 (Tex. Crim. App. 2009)
(applying Shankle analysis to allow appeal of ruling on motion to
suppress); Shankle v. State, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003)
(holding that charge bargain that “effectively puts a cap on punishment” is a
bargain governed by rule 25.2(a)(2)).





[3]Kennedy, 297 S.W.3d
at 341–42.





[4]See Tex. R. App. P.
25.2(a)(2); Shankle, 119 S.W.3d at 814.





[5]See Gutierrez v. State,
221 S.W.3d 680, 685 (Tex. Crim. App. 2007); Estrada v. State, 154 S.W.3d
604, 607 (Tex. Crim. App. 2005).





[6]See Illinois v.
Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990); Hubert v.
State, 312 S.W.3d 554, 561–62 (Tex. Crim. App. 2010).





[7]Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).





[8]Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d
857, 861 (Tex. App.—Fort Worth 2003, no pet.).





[9]Wiede v. State, 214
S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853,
855 (Tex. Crim. App. 2000), modified on other grounds by State v. Cullen,
195 S.W.3d 696 (Tex. Crim. App. 2006).





[10]Amador, 221 S.W.3d
at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim. App.
2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).





[11]Amador, 221 S.W.3d
at 673; Estrada, 154 S.W.3d at 607; Johnson, 68 S.W.3d at 652–53.





[12]Wiede, 214 S.W.3d
at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).





[13]Kelly, 204 S.W.3d
at 818–19.





[14]Id. at 818.





[15]See Gutierrez, 221
S.W.3d at 687; Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.), cert.
denied, 519 U.S. 1043 (1996).





[16]Gutierrez, 221
S.W.3d at 687; Rachal, 917 S.W.2d at 809.





[17]Rachal, 917 S.W.2d
at 809.





[18]State v. Stevens,
235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123
S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004).





[19]U.S. Const. amend. IV; Wiede,
214 S.W.3d at 24.





[20]Amador, 221 S.W.3d
at 672; see Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App.), cert.
denied, 130 S. Ct. 1015 (2009).





[21]Amador, 221 S.W.3d
at 672.





[22]Id. at 672–73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).





[23]Kothe v. State,
152 S.W.3d 54, 62 (Tex. Crim. App. 2004).





[24]Id. at 63.





[25]Id.





[26]McGee v. State,
105 S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 540 U.S. 1004
(2003); see Best, 118 S.W.3d at 862.





[27]Jones v. State,
833 S.W.2d 118, 123 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 921
(1993).  





[28]Davis v. State,
202 S.W.3d 149, 154 (Tex. Crim. App. 2006).





[29]Massey v. State,
933 S.W.2d 141, 148 (Tex. Crim. App. 1996).





[30]Id.





[31]Bumper v. North
Carolina, 391 U.S. 543, 548–50, 88 S. Ct. 1788, 1791–92 (1968).





[32]See Kothe, 152
S.W.3d at 59.





[33]See Swearingen v.
State, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003) (providing that
garbage or trash is considered abandoned property and that the police may
freely search it without a warrant).





[34]See Tex. R. App.
P. 38.1(i); Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App.
2005), cert. denied, 548 U.S. 926 (2006); Tong v. State, 25
S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1053
(2001); Mosley v. State, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op.
on reh’g), cert. denied, 526 U.S. 1070 (1999).





[35]See Tex. R. App.
P. 47.4. 





[36]In the “Summary of
Argument” section of his brief, appellant contends that the trial court erred
by “not suppressing the evidence . . . because the seizure of the evidence was
the result of an unlawful, warrantless raid and entry into [a]ppellant’s home
based on an unreasonable ‘knock and talk’ investigative technique conducted at 3:00
a.m.”





[37]The State correctly
observes that appellant’s trial counsel “presented nothing that would have put
the trial court on notice that he was seeking to suppress evidence based on the
theory that the ‘knock and talk’ was unreasonable.”  We should not address an
issue that has not been preserved.  See Ford v. State, 305 S.W.3d
530, 532 (Tex. Crim. App. 2009).